**H. W. GLESSNER, Trustee in Bankruptcy of Marvin K. Dunagan, Bankrupt, Appellant,**

v.

**MASSEY–FERGUSON, INC., a corporation, et al., Appellees.**

**No. 19778.**

United States Court of Appeals Ninth Circuit.

Dec. 13, 1965.

Rehearing Denied Jan. 19, 1966.

Clague A. Van Slyke, Tucson, Ariz., for appellant.

Henry Jacobowitz, Phoenix, Ariz., for appellee.

Before HAMLEY and BROWNING, Circuit Judges, and MATHES, Senior District Judge.

MATHES, Senior District Judge:

The trustee in bankruptcy of Marvin K. Dunagan, one-time farm implement dealer at Willcox, Arizona, appeals from the District Court's judgment denying the trustee's claim to certain equipment and parts, or the value thereof, which were repossessed from the bankrupt by appellee Massey-Ferguson under certain conditional sales contracts within the four-month period next preceding the filing of Dunagan's voluntary petition in bankruptcy.

The material facts, as found by the District Court, are not in dispute, and may be summarized as follows: The bankrupt came into possession of the equipment and parts in question pursuant to a "Dealer Wholesale Note and Invoice", and certain "Dealer Sales Agreements" between Massey-Ferguson and the bankrupt, which admittedly amounted to contracts of conditional sale under Arizona law. On April 12, 1963, some two months prior to bankruptcy, appellee repossessed the personal property in controversy "under a claim of ownership" as seller, by virtue of the conditional sale contracts which had reserved title in the appellee until full payment of the purchase price.

The contracts of conditional sale were never filed for record in Arizona. The bankrupt had never sold or agreed to sell any of the property to any purchaser, and none of the bankrupt's creditors had placed any lien thereon, prior to appellee's repossession. Moreover, at the time the property was so repossessed by appellee, the bankrupt was insolvent and appellee had reasonable cause to believe that the bankrupt was insolvent.

The sole question presented upon this appeal is whether the District Court correctly decided that the trustee was not entitled to reclaim the repossessed property under §§ 70 sub. c, or 70 sub. e(1), or 60, sub. b, of the Bankrupt Act. [11 U.S.C. §§ 110, sub. c, 110, sub. e(1), 96, sub. b.]

Turning first to § 70, sub. c, we note that the oft-called "strong-arm" clause of the section provides that:

"The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

We note also that the Bankruptcy Act leaves the § 70, sub. c question, whether "a creditor of the bankrupt could have obtained a lien" on the property at the date of bankruptcy, to be determined by State law, here the law of Arizona. [See: Corn Exchange Nat. Bank & Tr. Co., Philadelphia v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884 (1943); Bryant v. Swofford Bros. Dry Goods Co., 214 U.S. 279, 29 S.Ct. 614, 53 L.Ed. 997 (1909); In re Rosenberg Iron & Metal Co., 343 F.2d 527 (7th Cir. 1965); In re Kellett Aircraft Corp., 173 F.2d 689 (3rd Cir. 1949).]

Arizona law recognizes as valid contracts of conditional sale of personal property which reserve title to the goods in the seller. [Ariz.Rev.Stat. §§ 44–301, 44–304.] However, such contracts are made subject to § 44–305 which declares that:

"Every provision in a conditional sale reserving property in the seller,

shall be void as to any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy a lien upon them, before the contract or a copy thereof shall be filed as hereinafter provided, and is void as to all persons except for the buyer unless such contract or copy is so filed within ten days after the making of the conditional sale." [Ariz.Rev.Stat. § 44–305]

In Castaneda v. National Cash Register Co., 43 Ariz. 119, 29 P.2d 730 (1934), the Arizona Supreme Court considered the phraseology of § 2890 of the Revised Code of 1928, which is identical in relevant portions to the above-quoted provisions of § 44–305 of the Revised Statutes, and held that the phrase "and is void as to all persons except for the buyer" could not be reconciled with the provisions immediately preceding it. In this connection, the Arizona Court said:

"Of course the Legislature did not intend to protect the seller's reserved property in one sentence and to invalidate such property under precisely the same facts in the next sentence. Effect cannot possibly be given to both these legislative expressions. One or the other, we must assume, expressed what the Legislature in fact and in truth intended. * * * [W]e must conclude that it intended to preserve [§ 5 of the Uniform Conditional Sales Act] as originally passed." [43 Ariz. at 125, 29 P.2d at 732.]

Section 5 of the Uniform Conditional Sales Act was originally enacted in Arizona as § 5, ch. 40 of the Laws of 1919, the language of which was identical to later § 2890; except that § 5 did not contain the phrase "and is void as to all persons except for the buyer", but simply provided that the reservation of title in a conditional seller was void only as against purchasers and lien creditors who acquired their interests before the contract was filed for public record. And in the Castaneda case, the Arizona Court cited with approval the following comments of the Commissioners on Uniform State Laws:

"The purchasers and creditors have a right to demand that there shall be a record at the time they buy or acquire a lien, but they have no right to complain if the record was made twenty days after the delivery of the goods, instead of ten days, so long as it was made prior to their acquisition of a claim against the goods. It was certainly the intention of the Commissioners on Uniform State Laws to make a filing in twenty or thirty days after the making of the contract, valid as against all purchasers from the buyer subsequent to the filing and against all creditors of the buyer levying or attaching after the filing. The matter was fully discussed. The intent of the Commissioners was undoubtedly explained by them to the legislatures of the various states which have adopted the Act, and so has become the legislative intent." [Castaneda v. National Cash Register Co., supra, 43 Ariz. at 123, 29 P.2d at 732; see 2A Uniform Laws Ann. 90.]

In the case at bar, although the conditional sale agreements were never filed for public record, admittedly no buyer purchased any interest in the property and no creditor obtained a lien thereon prior to appellee's repossession. Arizona law treats repossession as the legal equivalent of filing for public record; and justly so, since no creditor or purchaser could thereafter rely upon the debtor's apparent ownership of the property. [Moore v. Chilson, 26 Ariz. 244, 224 P. 818 (1924).]

Under Arizona law, then, the only person who could defeat appellee's rights in the repossessed property here would be required to qualify, either as a purchaser of the property without notice of the conditional sale agreements, or as a creditor who had acquired a lien by attachment or levy without such notice, before the repossession occurred.

As the Court explained in Lewis v. Manufacturers Nat. Bank, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961), the trustee acquires under § 70, sub. c of the Act the rights of a hypothetical creditor "then holding a lien" as of the time of filing of the petition in bankruptcy; but the trustee may not reach back to some "anterior point of time" and assert the rights of a creditor at such "anterior point of time". The District Court correctly concluded, therefore, that § 70, sub. c of the Act was inapplicable at bar, since no creditor, actual or hypothetical, "could have obtained a lien" on the property "at the date of bankruptcy". [Cf. Pacific Finance Corp. v. Edwards, 304 F.2d 224 (9th Cir. 1962).]

Furthermore, as the learned District Judge pointed out, the absence of any purchaser or attaching creditor prior to repossession prevents the trustee from recovering under § 70, sub. e(1) of the Act [11 U.S.C. § 110, sub. e(1)], no transfer of the repossessed property having been made or suffered by the debtor which was "fraudulent as against or voidable for any other reason by any creditor of the debtor" under the law of Arizona.

There remains so be considered, then, what rights the appellant trustee had under § 60 of the Bankruptcy Act. [11 U.S.C. § 96.] The precise question is whether appellee's repossession of the property amounted to voidable preference within the provisions of § 60.

Section 60, sub. a(1) defines a preference to be:

" * * * a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class." [11 U.S.C. § 96, sub. a(1).]

And § 60, sub. b declares such a transfer voidable at the suit of the trustee, if the creditor knew or had reasonable cause to believe that the debtor was insolvent at the time the transfer was made. [11 U.S.C. § 96, sub. b.]

Under the 1910 version of § 60, sub. b [36 Stat. 838], the Supreme Court held that tardy filing for public record of an agreement of conditional sale, within the four-month period preceding bankruptcy, did not constitute a preferential transfer. [Bailey v. Baker Ice Machine Co., 239 U.S. 268, 36 S.Ct. 50, 60 L.Ed. 275 (1915).] The rationale of the court's holding was that, under a conditional sales contract, where title to the property does not pass to the buyer until fulfillment of the conditions of sale, the seller's later repossession of the property will not operate as a "transfer" of "any of the property of a debtor", even though the agreement of conditional sale was never filed for public record. The Court observed that: "The property to which it [the contract] related was not [the conditional vendee's], but [the conditional vendor's]". [Bailey v. Baker Ice Machine Co., supra, 239 U.S. at 274, 36 S.Ct. at 53, and see: Finance & Guaranty Co. v. Oppenhimer, 276 U.S. 10, 48 S.Ct. 209, 72 L.Ed. 443 (1928); Guaranty Security Corp. v. Reed, 299 F. 265 (1st Cir. 1924); Big Four Implement Co. v. Wright, 207 F. 535 (8th Cir. 1913).]

However, the 1950 and 1952 amendments to the Bankruptcy Act convince us that the Bailey doctrine no longer subsists. In 1950, the Congress amended § 60 to define more precisely the time of a "transfer" within the meaning of § 60, subs. a and b, by providing in § 60, sub. a(2) that:

For the purposes of subdivisions (a) and (b) of this section [60], a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights

of the transferee." [64 Stat. 24 (1950) ; 11 U.S.C. § 96, sub. a(2).]

Section 60, sub. a(7) (I) allows the creditor twenty-one days, unless the State law fixes a shorter period of time, within which to perfect the creditor's interest so that no lien described in § 60, sub. a(7) (II) can become superior to the creditor's rights in the property. [11 U.S.C. § 96, sub. a(7) (I).] And § 70, sub. a(7) (II) provides:

> "Where compliance with the law applicable to the transfer is not had in accordance with the provisions of subparagraph I, the transfer shall be deemed to be made or suffered at the time of compliance therewith." [11 U.S.C. § 96, sub. a(7) (II).]

In 1952, the Congress amended § 1(30) to include a contract of conditional sale within the statutory definition of a "transfer" by expressly declaring that "the retention of a security title to property delivered to a debtor shall be deemed a transfer suffered by such debtor." [66 Stat. 420 (1952), 11 U.S.C. § 1(30).]

The 1950 and 1952 amendments to the Bankruptcy Act do not, it is true, explicitly disavow the Bailey doctrine that rights embraced within a title interest retained by the conditional seller are not "property" of the vendee-debtor, but the legislative history of the amendments persuades us that the Congressional intent was to repudiate unequivocally the Bailey rationale. Before recalling the Congressional reports on the amendments, we should first refer to an earlier footnote to the 1943 opinion in Corn Exchange Nat. Bank & Tr. Co., Philadelphia v. Klauder, supra, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884, wherein the Court referred to the testimony of Professor McLaughlin at Congressional hearings held prior to the 1938 Chandler-Act amendments, as follows:

> "He stated Thompson v. Fairbanks, 196 U.S. 516 [25 S.Ct. 306, 49 L.Ed. 577] as applying a rule of state law that a mortgagee by taking possession of the mortgaged property at a time subsequent to the execution of the mortgage thereby

validated it as of the time of execution. He said that § 60a would prevent such validation by relation back. Similar disapproving reference was made to Bailey v. Baker Ice Machine Co., 239 U.S. 268 [36 S.Ct. 50, 60 L.Ed. 275]." [318 U.S. at 438, n. 11, 63 S.Ct. at 682.]

The 1949 Report of the Judiciary Committee of the House (H.R. Report No. 1293, 81st Congress, 1st Sess., to accompany S. 88), dealing with the proposed 1950 amendments, declared:

> "In Sexton v. Kessler ((1912) 225 U.S. 90 [32 S.Ct. 657, 56 L.Ed. 995]), the Supreme Court, under the language of the Bankruptcy Act prior to the 1938 amendment, recognized as valid a pledge of stocks and bonds consummated within the 4-month period, at a time when the pledgor was insolvent, because a promise to make a pledge had been made before the commencement of the 4-month period. This result was reached on the doctrine of 'relation back.'

> "Similarly, in Carey v. Donohue ((1916) 240 U.S. 430 [36 S.Ct. 386, 60 L.Ed. 726]), the Supreme Court recognized as valid an unrecorded deed to real estate, on the ground that the applicable State statute did not make such a deed invalid as against judgment creditors. The Carey case, accordingly, became known as the 'pocket lien' case.

> "Other cases, substantially to the effect of one or the other of these two, are Bailey v. Baker Ice Machine Co. ((1915) 239 U.S. 268 [36 S.Ct. 50, 60 L.Ed. 275]) ; Martin v. The Commercial Bank ((1918) 245 U.S. 513 [38 S.Ct. 176, 62 L.Ed. 441]) ; and Bunch v. Maloney ((1918) 246 U.S. 658 [38 S.Ct. 425, 62 L.Ed. 925]).

> "In 1938 the Bankruptcy Act was amended to obviate the effect of these cases, which were regarded with disfavor by the great majority." [1950 U.S.Code Cong.Service,

pp. 1985, 1986; See Bankruptcy Act § 60, sub. a(6); 11 U.S.C. § 96, sub. a(6).]

Next came the Senate and House report on the 1952 legislation, to "clarify" the definition of "transfer" in § 1(30) of the Bankruptcy Act, stating:

"Section 1(h) of the bill adds a sentence to the definition of 'transfer' in section 1(30) of the act to clarify it. Notwithstanding the apparently sweeping language of the present definition of transfer, there is a chance that it would be held insufficient to cover the security interest reserved in the grantor by conditional sale, lease, or bailment transaction with the debtor, because such interests are not the results of transfers made by the debtor, although they usually perform the same function as a transfer made by him for the purpose of security. Bailey v. Baker Ice Machine Co., 239 U.S. 268 [36 S.Ct. 50, 60 L.Ed. 275] (1915), held that a conditional sale to the debtor could not be a preferential transfer, because it was not made by the debtor. Since the [1950] amendment of section 60, it is clear that a preferential transfer may be suffered by the debtor, but the generality of the present definition is clarified by the declaration that such a reserved interest may be a transfer suffered by the debtor." [Senate Report No. 1395, April 2, 1952 (to accompany S. 2234), 1952 U.S.Code Cong. and Admin.News, pp. 1960, 1963.]

Accordingly, appellee's retained "security title" here must be deemed to be "a transfer * * * of the property of a debtor * * * suffered by such debtor" [§ 60, sub. a(2); 11 U.S.C. § 96, sub. a(2)] on April 12, 1963, when appellee repossessed the property in controversy. For prior to this repossession, the property was subject to the claims of all purchasers from and all creditors of the buyer who might have obtained a lien thereon in accordance with the law of Arizona, without actual or constructive notice of the seller's retained "security title", inasmuch as the conditional sale agreements covering the property had never been filed for public record as required by Arizona law. [Ariz.Rev. Stat. § 44–305.]

We hold, therefore, that appellee's failure to file the contracts of conditional sale for public record, as required by § 44–305 of Arizona's Revised Statutes, made the later repossession of the property in question a transfer of the debtor's interest in such property, "for or on account of an antecedent debt", created at the time of the making of the contract of conditional sale, and thus depleted the estate of the bankrupt to the extent of the value of the debtor's property rights so transferred.

Next it is necessary to consider whether this transfer, so "suffered by such debtor" enabled appellee to obtain a greater percentage of its debt than some other creditor of the same class, in contravention of § 60 of the Act. Appellee contends that the "class" referred to in § 60, sub. a includes only creditors holding claims arising from contracts of conditional sale, and not unsecured creditors of the bankrupt. We do not agree. While "class" is not expressly defined in the Bankruptcy Act, it appears that the general purpose of § 60 was not only to enable the trustee in bankruptcy to strike down "secret liens", but also to require prompt perfection of security interests in order to provide timely and adequate notice to other creditors. [See: Corn Exchange Nat. Bank & Tr. Co. v. Klauder, supra, 318 U.S. at 438–439, 63 S.Ct. 679; Bankruptcy Act § 60, sub. a(6), 11 U.S.C. § 96, sub. a(6); 3 Collier, Bankruptcy (14th Ed.) § 60.38(1).] Manifestly, if conditional vendors were the only creditors to be included within the "class" in question here, those purposes would be largely defeated.

It follows then that repossession by the appellee of the property subject to the conditional sale agreements, under the circumstances here and within the four-months period next preceding filing of

the petition in bankruptcy, must be held to be a preference under § 60, sub. b of the Bankruptcy Act. [11 U.S.C. § 96, sub. b]

This conclusion is buttressed by the fact that, since the 1950 and 1952 amendments to the Bankruptcy Act, both the Court of Appeals of the Second Circuit and the Court of Appeals of the Fifth Circuit have in effect held that the doctrine of Bailey v. Baker Ice Machine Co., supra, 239 U.S. 268, 36 S.Ct. 50, 60 L.Ed. 275; has been "repealed". [See: Sims v. Capitol Refrigeration Co., Inc., 294 F.2d 111 (2d Cir. 1961); In re Morasco, 233 F.2d 11 (2d Cir. 1956); B. F. Avery & Sons Co. v. Davis, 226 F.2d 942 (5th Cir. 1955).] Furthermore, as we read them, the reported decisions of the District Courts on the subject are in accord with this view. [See: Brown v. American Trust Co., 186 F.Supp. 249 (N.D. Cal.1960); In re Huston, 143 F.Supp. 40 (N.D.Ohio 1956); In re Kaufman, 142 F.Supp. 759 (W.D.Ky.1956); In re Burton, 120 F.Supp. 148 (D.Md.1954); and see Dinkelspiel v. Garrett, 96 F.Supp. 800 (W.D.Ark.1951).]

On the other hand, the Court of Appeals of the First Circuit appears to continue of the opinion that the Baker doctrine still rules a situation such as that presented at bar. In so holding, the First Circuit seems to rely upon Finance & Guaranty Co. v. Oppenhimer, supra, 276 U.S. at 12, 48 S.Ct. 209, which we think must surely fall with Baker in the face of the 1952 Congressional declaration, in § 1(30) of the Act, that "retention of a security title to property delivered to a debtor shall be deemed a transfer suffered by such debtor." [See Carina Mercury, Inc. v. Igaravides, 344 F.2d 397 (1st Cir. 1965).]

Our high regard for the acumen of the Court of Appeals of the First Circuit gives us pause, but we remain nonetheless convinced that both reason and policy, as well as legislative history, sustain our conclusion that, under the circumstances at bar, repossession by a conditional seller of property subject to a conditional sale agreement, within the four-months period next preceding filing of the petition in bankruptcy, constitutes a preference recoverable by the trustee under § 60, sub. b of the Bankruptcy Act. [11 U.S.C. § 96, sub. b.]

This view finds further support in the fact that the result avoids the anomaly of allowing the security interest of a conditional seller to stand invincible while, under similar circumstances, the security interest of a chattel mortgagee is held voidable by the trustee in bankruptcy. [Compare: McKnight v. M. & J. Finance Corp., 247 F.2d 112 (4th Cir. 1957) and England v. Moore Equipment Co., 94 F.Supp. 532 (N.D.Cal.1950), with Bailey v. Baker Ice Machine Co., supra, 239 U.S. 268, 36 S.Ct. 50, 60 L.Ed. 275. See L. Hand, J., dissenting in In re Lake's Laundry, Inc., 79 F.2d 326, 328–329, 102 A.L.R. 247 (2nd Cir. 1935); Senate Report No. 1395, supra, 1952 U.S.Code Cong. and Admin.News, at p. 1963; 3 Collier, Bankruptcy (14th Ed.) § 60.43(2).]

The judgment appealed from is reversed and the cause remanded for further proceedings not inconsistent with this opinion.