**In re BUTSON'S, INC., Bankrupt.**

**Everette H. WILLIAMS, Trustee in Bankruptcy, Plaintiff,**

**v.**

**E. E. WEBB, Defendant.**

**Bankruptcy No. 78–02240.**

United States Bankruptcy Court,
D. Oregon.

Jan. 8, 1980.

Jerome B. Shank, Portland, Or., for plaintiff.

Michael S. Fryar, Gresham, Or., for defendant.

## OPINION

FOLGER JOHNSON, Bankruptcy Judge.

The trustee filed a complaint to recover from the defendant a preferential transfer of $7,401.25. After two pretrial conferences the parties stipulated as to all facts so that no testimony was offered at the trial.

In 1976 the defendant sold his business assets to Butson's and took a security agreement but failed to file any financing statement as required under the Uniform Commercial Code in Oregon. On August 22, 1978, Butson's was indebted to the defendant in the amount of $7,401.25 and that sum or more had been owing the defendant during the two preceding years. On that date the defendant seized assets of Butson's to satisfy the antecedent debt. It was agreed that the reasonable value of such assets was equivalent to the debt. On September 5, 1978, the defendant finally filed a security agreement as a financing statement with the Secretary of State of the State of Oregon. On September 22 Butson's filed bankruptcy.

The parties also agreed that all of the elements of a voidable preference existed except one. The seizure of the assets on August 22 constituted a transfer of the debtor's property to the creditor on account of an antecedent debt within four months prior to the filing of the bankruptcy. It is admitted that the debtor was insolvent at the time and that the defendant had reasonable cause so to believe. The only element of a preference still in dispute is whether the effect of such transfer would be to enable the creditor to obtain a greater percentage of his debt than some other creditor of the same class.

With all other elements of the preference admitted, the trustee filed a motion for summary judgment and briefs were submitted and oral arguments made by both parties. The defendant claims that he should not be treated as an unsecured creditor but as a secured creditor occupying a separate class by himself and therefore the seizure of assets cannot result in giving him more than some other creditor in the same class. He argues that even though there had been no filing under the Uniform Commercial Code, the security agreement was nevertheless valid between the debtor and the creditor and no intervening liens had arisen before the seizure of the defendant.

To accept the defendant's position would be to approve the existence of secret liens—something the Bankruptcy Act has long specifically taken steps to eliminate. The class in which a creditor belongs should be determined by the scheme of distribution under the Bankruptcy Act. If there had been no seizure of goods or filing of financing statement prior to bankruptcy, would the creditor have occupied a position ahead of general creditors in distribution of the bankrupt's estate merely because the un-

filed security agreement was valid under state law between creditor and debtor? Clearly not. The trustee would have taken the assets as a judgment lien creditor under § 70 of the Bankruptcy Act.

Since perfection of the security interest occurred prior to bankruptcy by seizure of the assets—the later filing of the security agreement added nothing as the debt had been fully paid by the seizure—§ 70c was no longer available to the trustee. He had, however, a bankruptcy-created remedy under § 60 to recover the assets from the creditor by treating the transaction as a voidable preferential transfer.

Since the defendant had not perfected his security agreement as against third parties prior to the seizure of the assets one month before bankruptcy, he must be deemed an unsecured creditor for the purpose of classification under the Bankruptcy Act. In the Arizona case of *Glessner v. Massey-Ferguson, Inc.*, 353 F.2d 986 (1966), at page 992 the Ninth Circuit Court of Appeals said:

"Next it is necessary to consider whether this transfer, so 'suffered by such debtor' enabled appellee to obtain a greater percentage of its debt than some other creditor of the same class, in contravention of § 60 of the Act. Appellee contends that the 'class' referred to in § 60, sub. a includes only creditors holding claims arising from contracts of conditional sale, and not unsecured creditors of the bankrupt. We do not agree. While 'class' is not expressly defined in the Bankruptcy Act, it appears that the general purpose of § 60 was not only to enable the trustee in bankruptcy to strike down 'secret liens', but also to require prompt perfection of security interests in order to provide timely and adequate notice to other creditors. . . . Manifestly, if conditional vendors were the only creditors to be included within the 'class' in question here, those purposes would be largely defeated."

Following the *Glessner* case the U.S. District Court for the Western District of Virginia in *In re Markham*, 254 F.Supp. 948 (1966), where there was another belated filing the Court said at page 959:

"Furthermore, the effect of this 'transfer,' if upheld, will be to enable the creditor, Lowe's, to obtain a greater proportion of its debt than some other creditors of the same class. By creditors of the same class it is meant that the creditor must gain advantage over some or all of the creditors in its class as set forth in § 64 relating to priorities. All creditors other than those classified in § 64 are general creditors and belong to the same class, whether secured or unsecured. *Glessner v. Massey-Ferguson, Inc.*, supra. After the execution and before the filing of the contract Lowe's was an unsecured creditor and by filing the agreement beyond the grace period sought to gain an advantage over the other unsecured creditors of the bankrupt."

In the case of *Dean v. Planters National Bank of Hughes*, 176 F.Supp. 909 (E.D.Arkansas, 1959), there was a defective recording of a mortgage. The creditor also argued that the lien was good between the parties and it should therefore be a secured creditor. The Court said:

"In a case of this kind it is clear that a creditor is not deemed to be 'secured' merely because he has a lien which is good as between the parties; his security also must constitute a lien as to third persons. . . . It is equally clear that the question whether the bank's chattel mortgage is a lien as to third persons must be decided by reference to the law of Arkansas." (at page 912)

\*　　\*　　\*　　\*　　\*　　\*

"Since the mortgage was not a lien as to third parties, the bank was simply an unsecured creditor, as far as this case is concerned, and receipt of full payment of its note gave it a very distinct advantage over other creditors of the same class, who have received only a portion of their respective claims." (at page 913)

The case of *Azar v. Electric Constructors, Inc.*, 293 F.Supp. 33 (M.D.Alabama, 1967), also supports the principle that the late recording creditor is in the class of general creditors.

148

There are in fact other general unsecured creditors involved in the case at bar who will not be paid in full. Since the defendant's interest must be measured against theirs rather than against those of secured creditors, it is obvious that those general unsecured creditors will have their recovery reduced proportionately if the defendant were permitted to retain the $7,401.25 worth of goods, and the defendant would receive a greater percentage of its debt than the others. Thus, the sixth and final element for a voidable preference is present.

The defendant's reliance on the Bankruptcy Reform Act of 1978 is misplaced. All the substantive facts in the case, including the filing of the bankruptcy petition, occurred prior to October 1, 1979, the effective date for the new Code. The Transition Title for the Code mandates that:

"A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted." Pub.L. No. 95–598, § 403(a) (Nov. 6, 1978).

As this Court stated in *In re Rainey,* 1 B.R. 569 (B.Ct.Oregon, 1979), any attempt to apply the Comments and Legislative History—and as far as the present case is concerned, the statutory language of the Code itself—to a pre-October 1, 1979, case would be a "violation of the Code's specific statute, as well as a retroactive impairment of the parties' rights arising under the Bankruptcy Act."

The Court therefore holds in favor of the trustee, and the motion for summary judgment is allowed. The defendant does not occupy a separate class as a secured creditor but is a member of the class of general unsecured creditors for the purpose of determining whether the preferential transfer is voidable. Judgment should be awarded the trustee in the stipulated amount of $7,401.25.